In The
Court of Appeals
For The
First District of Texas
____________

NO. 01-08-00020-CV
____________

ODL SERVICES, INC., Appellant

V.

CONOCOPHILLIPS COMPANY, Appellee




On Appeal from the 295th District Court 
Harris County, Texas
Trial Court Cause No. 2007-71919
 



* * *
____________

NO. 01-08-00039-CV
____________

IN RE ODL SERVICES, INC., Relator




Original Proceeding on Petition for Writ of Mandamus
 



O P I N I O N
          By interlocutory appeal and petition for writ of mandamus, appellant and
relator, ODL Services, Inc. (“ODL”), challenges the trial court’s order denying its
motion to compel arbitration and granting the application to stay arbitration of
appellee and real party in interest, ConocoPhillips Company (“Conoco”). We
determine (1) whether the Federal Arbitration Act


 (“FAA”) applies and whether
review is proper by mandamus or interlocutory appeal, given that the motion invoked
the FAA and the application invoked the Texas General Arbitration Act


 (“TAA”);
(2) whether the threshold issue of the existence of a written arbitration agreement
between ODL and Conoco was for the trial court or for the arbitrator to determine;
(3) whether the trial court erred in determining that there was no written agreement
to arbitrate and, thus, in refusing to compel arbitration and in staying the arbitration
proceeding that ODL had begun; and (4) whether the trial court abused its discretion
in entering certain findings of fact. In the interlocutory appeal, we affirm that portion
of the order that granted Conoco’s application to stay arbitration that was made under
the TAA. In the mandamus proceeding, we deny the petition for writ of mandamus
(1) complaining of that portion of the interlocutory order that denied ODL’s motion
to compel arbitration that was asserted under the FAA and (2) complaining of the
entry of certain findings of fact.
Background
          The disputed issues in this case arise out of (1) a master agreement between the
predecessors of ODL and Conoco and (2) events occurring during the installation of
a floating storage and off-loading vessel in the Gulf of Paria, Venezuela (“the FSO
project”).
A.      The Master Agreement Between Conoco and ODL
          In March 1998, Conoco, Inc., the predecessor of Conoco, and Noble Denton
& Associates, Inc., the predecessor of ODL, executed a “Master Agreement.” The
Master Agreement provided in pertinent part:
WHEREAS, [Conoco] and its affiliated and subsidiary companies
are engaged in drilling and production operations in various countries
around the world; and
 
WHEREAS, from time to time, [Conoco’s] affiliated and
subsidiary companies may request certain support services in connection
with their drilling and production operations in one or more such
countries (other than the United States); and 

 
WHEREAS [Conoco] wishes to enter into a Master contract with
[ODL] setting forth the general terms and conditions to apply should
[Conoco] request [ODL] to provide such services to any of its
subsidiary or affiliated companies; and
 
WHEREAS, [ODL] is in the business of providing such services
. . . .
 
1.THE MASTER CONTRACT
 
[Conoco] and [ODL] agree that, commencing with the effective
date of this Agreement, the general terms and conditions entitled
“Master Support Services Contract Terms and Conditions” and attached
to this Agreement (hereinafter “Master Terms”) shall apply to all
services which [ODL] . . . provide[s] for [Conoco] or any of its parent,
subsidiary and affiliated companies . . . , pursuant to a “Request for
Services” issued and accepted as set forth in Section 1.1 of the Master
Terms.
 
. . . .
 
6.MISCELLANEOUS
 
. . . This Master Contract is the entire agreement between the
Parties as to the Services . . . . This Master Contract may only be
amended by a clear statement in writing signed by a duly authorized
representative of each of the Parties.

(Emphasis added.) 
          The “Master Support Services Contract Terms and Conditions” that were
expressly incorporated into the Master Agreement provided, in turn, as follows:
The following Master Support Services Contract Terms and
Conditions (hereinafter “Master Terms and Conditions”) shall apply
upon [Conoco’s] issuance and [ODL’s] acceptance of a Request for
Services as set forth below. The term “Contract” as used below shall
mean a Request for Services and the Master Terms and Conditions.
ARTICLE 1. THE SERVICES
 
1.1The Services. When [Conoco] desires [ODL] to perform
technical and support services for it, [Conoco] shall send [ODL] a
Request for Services in the form set forth in Exhibit “1.” The Request
for Services shall name the contracting entity, describe in detail the
services to be performed (hereinafter referred to as “the Services”) and
shall specify the country in which the Services are to be performed
(hereinafter referred to as “Country of Operation”). If [ODL] is willing
to perform the Services under the terms set forth in the Request for
Services, duly authorized representatives of [ODL] and [Conoco] shall
sign the Request for Services and return it to [Conoco]. [ODL] shall
perform the Services in accordance with the Request for Services and
the terms of this Contract. In the event of any conflict between the
Request for Services and these Terms and Conditions, the terms of the 
Request for Services shall prevail.
 
[ODL] shall arrange for its personnel, material and equipment as
defined in the Request for Services to be available and ready for the
commencement of Work at the designated location in the Country of
Operations specified in the Request for Services.
 
. . .

(Emphasis added.) The “Master Support Services Contract Terms and Conditions” 
repeatedly referred to various terms of the Request for Services (“RFS”) that was
required for each job. Finally, the “Master Support Services Contract Terms and
Conditions” included the following article concerning choice of law and arbitration:
ARTICLE 17.GOVERNING LAW AND ARBITRATION
17.1Governing Law. This Contract, and any matter arising out
of or in connection with this Contract or the Services, shall be governed
by and construed in accordance with the laws of the State of New York,
U.S.A., except for any law, rule or court opinion that would apply the
laws of another jurisdiction.
 
17.2Arbitration. Any dispute, controversy or claim arising out
of or in connection with this Contract, or the breach, termination or
validity thereof, shall be settled by final and binding arbitration to be
conducted in accordance with the following provisions:
 
17.2.1 The arbitration shall be conducted in
accordance with the International Arbitration Rules of the
American Arbitration Association. . . . .

(Emphasis added.) It was upon article 17 that ODL based its request for arbitration
with Conoco. 
          In general, since the 1998 Master Agreement was executed, ODL worked for
Conoco about six or seven times. In ODL’s experience working under the Master
Agreement with Conoco, the timing of Conoco’s sending an RFS would vary from
“project to project”: sometimes, ODL would begin work, and Conoco would later
send the RFS.
B.      The Events Leading to the Parties’ Dispute
          In 2006, ODL, a Texas corporation, signed a “Services Agreement” with Conar
Construcciones C.A. (“Conar”), a Venezuelan corporation, to provide engineering
services as Conar’s subcontractor on the FSO project. Some of ODL’s services for
Conar occurred in Venezuelan waters, and some occurred in Houston, Texas. Conar,
in turn, had a contract with Conoco Venezuela C.A. (“CVCA”) that covered work on
the FSO Project. CVCA was an affiliate of, and a separate company from, Conoco.
 
          Problems arose with Conar’s work on the FSO project, and ODL was having
difficulty getting Conar to pay ODL. On December 7, 2006, CVCA’s Installation and
Technical Services Manager, Alister McIntosh, advised Conar in writing that Conar
had defaulted under the parties’ contract.
          On December 14, 2006, a monthly conference call was held at ODL’s offices
in Texas concerning the FSO project. At least one of the attendees was in Venezuela
at the time. Those attending were Saaid Zaltash, Chris Haffner, Robert Sokoll, Weida
Chen, Alister McIntosh, Mark Bacon, Larry Belcher, Magda Canas, Claudia Andrade,
Max Grobe, Guy Noble, Tom Visentin, Reidar Eliassen, Karol Horne, and Roque
Muracciole.
          The parties disputed both what was decided at the December 14 meeting and
which attendees represented which corporate entities. For example, the minutes from
the December 14 meeting—to which no attendees objected—indicated that “CoP”
(which Horne’s testimony indicated was Conoco) would pay subcontractors directly
and would make all further decisions. However, Sokoll recalled that it was CVCA,
not Conoco, that would step into the payment and supervisory role mentioned by the
minutes. Likewise, the parties disputed whether certain individuals at the December
14 meeting represented Conoco or, instead, CVCA. For example, the record indicates
that Haffner, Chen, and Sokoll were Conoco employees being paid by Conoco. Yet
there was also testimony that these three individuals were working under a “technical
work agreement” with CVCA at the time of the meeting, under which they were
“technically working for CVCA and CVCA was reimbursing” their time “back to
Conoco” for what Conoco paid them, and that Sokoll also reported to CVCA
employees.


 
          The parties’ dispute on these matters continued into the hearing on the
application to stay and the motion to compel arbitration, with each party eliciting
evidence in support of its position on (1) whether Conoco entered into a contract with
ODL at the December 14 meeting and, if so, (2) whether that contract incorporated
or invoked the Master Agreement and its arbitration clause.


 What was undisputed
is that a written RFS in the form required by the Master Agreement was never
executed for the FSO project. It was further undisputed that no one at the December
14 conference-call meeting referenced the Master Agreement or indicated that its
terms were incorporated by reference, amended the terms of the Master Agreement,
or entered into a separate arbitration agreement covering the contract that was
allegedly reached on December 14. Neither do the written minutes of the December
14 meeting mention arbitration or the Master Agreement. 
          ODL’s corporate representative, David Rowan, testified that after the
December 14, 2006 conference-call meeting, the scope of ODL’s work on the FSO
project continued under the terms of its Services Agreement with Conar. However,
Rowan also testified that ODL followed certain procedures required by the Master
Agreement, including keeping daily logs, monthly reports, and completion
documentation, although he explained that doing these things was “also under
[ODL’s] agreement with Conar.”
 
C.      The Procedural Background
          On October 29, 2007, ODL made an arbitration demand on Conoco based on
the arbitration provision of the Master Agreement. ODL sought $6,839,443.90 for
goods and services that it had furnished and performed on the FSO project since
December 14, 2006. ODL filed a notice of arbitration with the International Centre
for Dispute Resolution of the American Arbitration Association (“AAA”), describing
its claims against Conoco as “breach of contract and quasi-contract.” 
          On November 26, 2007, Conoco filed a petition for declaratory and injunctive
relief. In that suit, Conoco sought (1) declarations of “its rights regarding the claim
sought by ODL . . . in the pending arbitration proceeding and the application of the
[Master Agreement] to ODL[’s] . . . claim”; (2) a temporary and permanent injunction
to prevent ODL from proceeding with arbitration and from “invoking the [Master
Agreement] and the arbitration provision therein against [Conoco] for recovery of
services on the FSO [Project] provided by ODL . . .”; and (3) attorney’s fees. Within
the same pleading, Conoco also included an application to stay arbitration that
invoked the TAA. See Tex. Civ. Prac. & Rem. Code Ann. § 171.023 (Vernon
2005).
          Shortly thereafter, ODL filed a motion to compel arbitration that invoked the
FAA, along with an answer conditional upon the motion’s disposition. The motion
and memorandum of law in support urged (1) that the FAA applied; (2) that, in the
Master Agreement, the parties had agreed that threshold matters of arbitrability,
including whether an arbitration clause existed (and whether Conoco had waived the
RFS requirement of the Master Agreement), were to be decided by the arbitrator, not
the trial court; and (apparently alternatively) (3) that the Master Agreement covered
all international work that ODL did for Conoco, even when no formal RFS had been
executed, and, in any event, Conoco had waived the Master Agreement’s requirement
of a formal RFS by accepting ODL’s services without issuing an RFS. ODL also
described the threshold issue as follows:
Conoco argues that no arbitration agreement exists between the parties
because the Master Agreement does not exist without an RFS. To the
contrary, whether Conoco waived the issuance of an RFS, raises the
question of the Master Agreement’s applicability, not its existence. . . .
Conoco is attempting to transform the issues regarding the Arbitration
Clause’s “applicability” into one of its legal “existence” to avoid the
case law which requires the arbitrator to determine arbitrability, and not
this Court.

 (Emphasis in original.) 

          In response to ODL’s motion to compel arbitration, and in support of its
application to stay arbitration, Conoco argued (1) that the existence of an arbitration
agreement was for the court to determine, not the arbitrator; (2) that the alleged
December 14 agreement could not support compelling arbitration because it was oral,
not written; (3) that in any event, the participants at the December 14 meeting did not
discuss the Master Agreement or incorporate its terms by reference, so that they did
not agree at that meeting to arbitrate anything; and (4) that an RFS was a “condition
precedent to a future contract for services that would incorporate the [Master
Agreement’s] written terms, including the arbitration provision.”
          On December 21, 2007, the trial court entered an interlocutory order reciting
that, after having considered the parties’ motion and application, the trial court was
“of the opinion that no valid and enforceable agreement to arbitrate exists governing
the claims which are the subject of arbitration.” The trial court thus granted Conoco’s
application to stay arbitration and denied ODL’s motion to compel arbitration.
          The trial court simultaneously entered the following findings of fact and
conclusions of law:
Findings of Fact:
 
1.ODL entered into a contract with [Conar] to provide services for
a floating storage and offloading vessel in Venezuela.
 
2.ODL knew that Conar had a contract with [CVCA] to provide
services and that ODL was a subcontractor to Conar on that
project.
 
3.CVCA and [Conoco] are separate legal entities. CVCA is a
subsidiary or affiliate of [Conoco].
 
4.ODL sent invoices to Conar and Conar has not paid all of the
invoices.

 
5.ODL’s predecessor and [Conoco’s] predecessor entered into a
Master Agreement in 1998. That agreement contains a written
agreement to arbitrate.
 
6.The Master Agreement provides that the agreement applies to all
services provided pursuant to a [RFS].
 
7.The Master Agreement covers a subsidiary or affiliate of
[Conoco] if identified in the [RFS].
 
8.In the event of a conflict between the Master Agreement and the
[RFS], the terms of the [RFS] shall prevail.
 
9.The agreement provides a written format for the [RFS] that
outlines the details of the services to be performed and the parties
to the request.
 
10.No written [RFS] was entered into between ODL and [Conoco].
 
11.No written [RFS] was entered into between ODL and CVCA.
 
12.Because of a default by Conar, on December 14, 2006 CVCA
orally agreed to begin paying Conar’s subcontractors directly,
subject to paperwork.
 
13.CVCA did make some payments to Conar directly.
 
14.ODL acknowledged that it had no direct contract with [Conoco]
on February 1, 2007.
 
15.ODL’s services benefitted CVCA.
 
16.On December 14, 2006, [Conoco] did not orally agree to begin
paying Conar’s subcontractors directly.
 
17.No oral contract incorporating the Master Agreement was entered
into between ODL and [Conoco].

 
18.ODL did not operate under the Master Agreement after December
14, 2006. All of its work was done under the terms of the
Conar/ODL agreement.
 
19.[Conoco] did not waive its right to have a signed [RFS] between
the parties.
 
Conclusions of Law:
 
1.There is no signed written agreement between ODL and [Conoco]
for arbitration of the claim by ODL that [Conoco] orally agreed
to pay Conar’s subcontractors directly after Dec. 14, 2006.
 
2.ODL is not entitled to arbitrate this dispute.
 
3.[Conoco] is entitled to a stay of arbitration.
The trial court did not enter a conclusion of law as to whether the FAA or the TAA
applied or under which of these statutes its two rulings were made.
          ODL filed a request for amended findings of fact and conclusions of law,
which objected to certain findings and conclusions on various bases, including that
the trial court did not conclude which arbitration law applied, the trial court
adjudicated the merits of ODL’s claims that were pending before the AAA, some of
the findings were incomplete, some findings conflicted with each other, and some
findings were unsupported by the evidence or were vague. The trial court then
entered a supplemental conclusion of law that “[t]he findings made by the court in
connection with the arbitration motion are not binding on the parties except in
connection with the arbitration motion and are not rulings on the merits of the case.” 
Whether the FAA Applies

          ODL contends, as it did below, that the FAA applies. The trial court did not
enter a conclusion of law as to whether the FAA or the TAA applied. 
          “The FAA ‘extends to any contract affecting commerce, as far as the
Commerce Clause of the United States Constitution will reach.’” In re Nexion Health
at Humble, 173 S.W.3d 67, 69 (Tex. 2005) (quoting In re L & L Kempwood Assocs.,
L.P., 9 S.W.3d 125, 127 (Tex. 1999)). In this context, the term “commerce” is
broadly construed. Id. Here, ODL contends that the alleged December 14 agreement
between ODL and Conoco came into being by conference call among employees of
corporations in different states and countries; additionally, that alleged agreement
concerned which corporate entity (Conoco or CVCA) would pay ODL on behalf of
Conar, a Venezuelan entity, for ODL’s work for Conar under a services agreement
between Conar and ODL in the Gulf of Paria, Venezuela. We this hold that the
alleged December 14 agreement was a contract affecting international commerce, to
which the FAA would apply. See Palm Harbor Homes, Inc. v. McCoy, 944 S.W.2d
716, 721 (Tex. App.—Fort Worth 1997, no pet.) (“It cannot be seriously argued that
such a transaction, which is the product of national and even international commerce,
does not affect interstate commerce.”).
 
Whether We Will Review the Rulings in the Trial Court’s Order by
Mandamus or Interlocutory Appeal

          The fact that the alleged contract affected interstate commerce, and the
application of the FAA, do not, in themselves, resolve whether an arbitration
agreement may be enforced by the TAA or whether interlocutory appeal or mandamus
is the proper means of reviewing a trial court’s order denying arbitration in such a
case.
          “The FAA ‘preempts state statutes to the extent they are inconsistent with that
Act.’” In re D. Wilson Constr. Co., 196 S.W.3d 774, 780 (Tex. 2006) (quoting Jack
B. Anglin Co. v. Tipps, 842 S.W.2d 266, 271 (Tex. 1992)). “The factors that
determine whether the FAA preempts the TAA are whether (1) the agreement is in
writing, (2) it involves interstate commerce, (3) it can withstand scrutiny under
traditional contract defenses, and (4) state law affects the enforceability of the
agreement.” In re Nexion Health at Humble, 173 S.W.3d at 69. Accordingly, “[t]he
mere fact that a contract affects interstate commerce, thus triggering the FAA, does
not preclude enforcement [of an arbitration agreement in that contract] under the TAA
as well.” In re D. Wilson Constr. Co., 196 S.W.3d at 780. Rather, “[f]or the FAA to
preempt the TAA, state law must refuse to enforce an arbitration agreement that the
FAA would enforce, either because (1) the TAA has expressly exempted the
agreement from coverage . . . or (2) the TAA has imposed an enforceability
requirement not found in the FAA . . . .” Id. 
          The parties dispute whether they entered into an agreement on December 14;
if they did, whether that agreement was in writing; and if so, whether their agreement
triggered application of the Master Agreement, which was the only agreement
containing an arbitration clause between ODL and Conoco. Putting aside the
significance of these matters for the moment, we see no basis on which the TAA
would exempt from coverage, or would impose different enforceability requirements
on, any arbitration agreement that might exist. Accordingly, the FAA would not
preempt the enforcement under the TAA of any arbitration agreement that might
exist. 
          The trial court did not enter a conclusion of law concerning whether any
arbitration agreement that might exist could be enforced by, or was enforced by, the
FAA or the TAA in this case. Conoco moved to stay arbitration under the TAA,
whereas ODL moved to compel arbitration under the FAA. The trial court granted
the application to stay that was asserted under the TAA and denied the motion to
compel that was asserted under the FAA. In In re D. Wilson Construction Co., the
relators-defendants moved to compel arbitration under both the TAA and the FAA,
which requests the trial court denied. 196 S.W.3d at 778. The contracts involved
interstate commerce, thus triggering the FAA, and referenced neither the TAA nor the
FAA. Id. at 778–79. The supreme court held that “[t]he mere fact that a contract
affects interstate commerce, thus triggering the FAA, does not preclude enforcement
under the TAA as well,” as long as the FAA does not preempt the TAA. Id. at 780. 
Because the FAA did not preempt the TAA in that case, the supreme court held that
the court of appeals had jurisdiction over both an interlocutory appeal taken under the
TAA’s provisions and a mandamus proceeding. Id. The supreme court then
proceeded to consider the matter in the original proceeding, dismissing the related
interlocutory appeal as moot after having granted full relief in the former proceeding. 
Id. at 783–84.
          Here, unlike in In re D. Wilson Construction Co., there are two separate
motions on which the trial court ruled in a single order: each motion sought
enforcement of the alleged arbitration agreement, or a stay of arbitration, under a
different arbitration act. Conoco applied to stay arbitration only under the TAA. 
Interlocutory appeal lies over an order granting an application to stay arbitration
when the application is asserted under the TAA. See Tex. Civ. Prac. & Rem. Code
Ann. § 171.098(a)(1) (Vernon 2005) (“A party may appeal . . . an order . . . denying
an application to compel arbitration made under Section 171.021 [of the TAA].”). 
When there is an adequate remedy by appeal, such as for this ruling, mandamus will
generally not lie. See Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992). We thus
review the trial court’s ruling granting Conoco’s motion to stay arbitration in the
interlocutory appeal.



          In contrast, ODL invoked only the FAA to enforce the alleged arbitration
agreement, although ODL could also have sought enforcement under the TAA. See
In re D. Wilson Constr. Co., 196 S.W.3d at 780. Appeal lies over “an order . . .
denying an application to compel arbitration made under Section 171.021 [of the
TAA].”


 Tex. Civ. Prac. & Rem. Code Ann. § 171.098(a)(1) (Vernon 2005)
(emphasis added). Under the plain language of section 171.098(a)(1), if the
application to compel arbitration is not “made under [TAA] Section 171.021,” then
no interlocutory appeal lies from a ruling denying that motion. ODL’s motion was
not made under TAA section 171.021. Accordingly, the trial court’s order denying
that motion could not have been one “denying an application to compel arbitration
made under Section 171.021 [of the TAA].” See id. In this circumstance, we review
the order denying ODL’s motion to compel arbitration by mandamus.
Whether the Trial Judge Abused Her Discretion in Denying
ODL’s Motion to Compel Arbitration (Mandamus)

          In issue one of its petition for writ of mandamus, ODL contends that the trial
judge erred in denying its motion to compel arbitration that invoked the FAA. 
A.      What the Standard for Mandamus Relief Is
          “Mandamus is proper to correct a clear abuse of discretion when there is no
adequate remedy by appeal, . . . as when a party is erroneously denied its
contracted-for arbitration rights under the FAA.” In re D. Wilson Constr. Co., 196
S.W.3d at 780–81 (citations omitted). “A trial court abuses its discretion if it acts in
an arbitrary or unreasonable manner, without reference to any guiding rules or
principles.” In re Nitla S.A. de C.V., 92 S.W.3d 419, 422 (Tex. 2002). Additionally,
a trial court “‘has no “discretion” in determining what the law is or applying the law
to the facts.’” In re D. Wilson Constr. Co., 196 S.W.3d at 781 (citations omitted)
(quoting Walker, 827 S.W.2d at 840). 
B.      Who Decides Substantive Arbitrability
          In its first argument under issue one, ODL asserts that the trial judge abused
her discretion in determining that no valid arbitration agreement existed between the
parties because the issue is one of substantive arbitrability and the Master Agreement
requires that such issues be determined by the arbitrator.
          1.       ODL’s Arguments
          In support of this portion of its issue, ODL argues:
15.. . . ODL recognizes it is typically the role of the court to initially
determine only the issue of arbitrability. However, based on the
freedom of contract, courts, including this one, have recognized an
exception which allows the parties the freedom to agree that the
arbitrators have sole jurisdiction over the issue of arbitrability. This
dispute should be referred to an arbitrator in its entirety.
 
. . . .

 
16.Under the [FAA] a court shall refer the question of arbitrability
to the arbitrator where there is “clear and unmistakable” evidence that
the parties intended to have the arbitrator decide this question. Many
courts have found “clear and unmistakable” evidence in two situations
both of which are applicable here. First, the courts have recognized that
“a ‘broadly worded arbitration clause committing resolution of all
disputes to arbitration’ would satisfy the clear and unmistakable
standard.” Second, “most courts have held that, ‘when . . . parties
explicitly incorporate rules that empower an arbitrator to decide issues
of arbitrability, the incorporation serves as clear and unmistakable
evidence of the parties’ intent to delegate such issues to an arbitrator.” 
Here, the arbitration clause includes both of these features.
 
. . . .
 
23.Conoco argues that no valid arbitration agreement exists between
the parties because the [Master Agreement] does not exist without an
RFS form. To the contrary, whether Conoco waived the use of its
traditional RFS form, is grounded in contract principals and touches on
the question of the [Master Agreement’s] applicability, not its existence. 
In reading cases cited by Conoco, it becomes clear that in the context of
arbitration agreements, “existence” refers to when a party alleges
forgery, unauthorized signature, or some other reason why an agreement
between the parties never existed. Here, the arbitration agreement
clearly exists. The [Master Agreement] was fully executed by both
companies. . . . Conoco instead is relying on a repackaged version of an
arbitrability argument to attempt to establish its point. This strained
effort to transform the issue of the Arbitration Clause’s “applicability”
into one of its legal “existence” is a transparent attempt to avoid the case
law requiring the arbitrator to determine arbitrability rather than the
court. . . .
 
24.ODL maintains that Conoco’s argument with respect to
“existence” is in effect an argument regarding arbitrability. However,
ODL and Conoco have already agreed to refer all disputes with respect
to the [Master Agreement] and Arbitration Clause’s existence or validity
to the arbitrator. As with arbitrability, the Arbitration Clause’s broad
language and incorporation of the AAA International Arbitration Rules
clearly evidences the parties’ intent to refer all disputes with respect to
the existence to the arbitrator. . . .
 
25.In addition, the parties explicitly granted to the arbitrator the
exclusive power to determine all disputes involving the “validity” of the
agreement . . . .
 
          2.       The Law
          “‘[A]rbitration is a matter of contract and a party cannot be required to submit
to arbitration any dispute which he has not agreed so to submit.’” Howsam v. Dean
Witter Reynolds, Inc., 537 U.S. 79, 83, 123 S. Ct. 588, 591 (2002) (quoting
Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582, 80 S. Ct. 1347,
1353 (1960)). 
          “In Howsam . . . , the United States Supreme Court . . . concluded that, unless
an arbitration agreement provides otherwise, a court may determine only matters of
substantive arbitrability . . . .” W. Dow Hamm III Corp. v. Millennium Income Fund,
L.L.C., 237 S.W.3d 745, 753 (Tex. App.—Houston [1st Dist.] 2007, orig. proceeding
& no pet.) (combined mandamus and interlocutory appeal) (citing Howsam at 84, 123
S. Ct. at 592). “The question of [substantive] arbitrability has two aspects: first,
whether the parties agreed to arbitration (or are bound by another’s agreement to
arbitrate . . . ); and second, whether a particular claim or dispute is within the scope
of the agreement.” P. McGregor Enters., Inc. v. Denman Bldg. Prods., Ltd., No. 07-05-0385-CV, 2007 WL 1201545, at *3 n.9 (Tex. App.—Amarillo May 25, 2007, pet.
denied); see First Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 942, 115 S. Ct.
1920, 1923 (1995) (describing arbitrability as whether the parties “agreed to arbitrate
the merits” of their dispute); In re Weekley Homes, 180 S.W.3d 127, 130 (Tex. 2005)
(describing “gateway matters” as including “whether a valid arbitration agreement
exists” and whether “an arbitration agreement is binding on a nonparty”). “In
contrast, the [Howsam] Court also determined that the arbitrator, rather than the court,
should determine matters of procedural arbitrability, i.e., those matters that ‘grow out
of the dispute and bear on its final disposition.’” W. Dow Hamm III Corp., 237
S.W.3d at 754 (quoting Howsam, at 84, 123 S. Ct. at 592)). 
 
          Parties may generally agree, however, to send even matters of substantive
arbitrability to arbitration. See Howsam at 84–85, 123 S. Ct. at 592. “Just as the
arbitrability of the merits of a dispute depends upon whether the parties agreed to
arbitrate that dispute, . . . so the question of ‘who has the primary power to decide
arbitrability’ turns upon what the parties agreed about that matter.” First Options at
943, 115 S. Ct. at 1923 (emphasis in original). If the parties did not agree to submit
the substantive arbitrability question itself to arbitration, then “the court should
decide that question just as it would decide any other question that the parties did not
submit to arbitration, namely, independently.” Id. at 943, 115 S. Ct. at 1924. “When
deciding whether the parties agreed to arbitrate a certain matter (including
arbitrability), courts generally . . . should apply ordinary state-law principles that
govern the formation of contracts,” with the qualification that, “when courts decide
whether a party has agreed that arbitrators should decide arbitrability,” courts “should
not assume that the parties agreed to arbitrate arbitrability unless there is ‘clea[r] and
unmistakabl[e]’ evidence that they did so.” Burlington Res. Oil & Gas Co. v. San
Juan Basin Royalty Trust, 249 S.W.3d 34, 39 (Tex. App.—Houston [1st Dist.] 2007,
pet. denied) (quoting First Options, 514 U.S. at 944, 115 S. Ct. at 1924). In First
Options, “[t]he Supreme Court noted that ‘the law treats silence or ambiguity about
the question “who (primarily) should decide arbitrability” differently from the way
it treats silence or ambiguity about the question “whether a particular merits-related
dispute is arbitrable because it is within the scope of a valid arbitration agreement”’
so as to not ‘force unwilling parties to arbitrate a matter they reasonably would have
thought a judge, not an arbitrator, would decide.’” Burlington Res. Oil & Gas Co.,
249 S.W.3d at 39–40 (quoting First Options, 514 U.S. at 944–45, 115 S. Ct. at
1924–25).
          3.       Analysis
          Here, the Master Agreement’s arbitration clause provides:
Any dispute, controversy or claim arising out of or in connection with
this Contract, or the breach, termination or validity thereof, shall be
settled by final and binding arbitration to be conducted in accordance
with the following provisions: . . . .

(Emphasis added.) Such language is broad. See, e.g., Hou-Scape, Inc. v. Lloyd, 945
S.W.2d 202, 205–06 (Tex. App.—Houston [1st Dist.] 1997, orig. proceeding) (“The
words used in these particular contracts, ‘arising out of or relating to,’ have been held
to be very broad language favoring arbitration.”). Additionally, the Master
Agreement requires that arbitration be “conducted in accordance with the
International Arbitration Rules of the American Arbitration Association.” These
rules provide in relevant part:
The tribunal shall have the power to rule on its own jurisdiction,
including any objections with respect to the existence, scope or validity
of the arbitration agreement.


International Dispute Resolution Procedures, http://www.adr.org/sp.asp?id=
33994#INTERNATIONAL%20ARBITRATION%20RULES (last visited Aug. 4,
2008) (emphasis added). It is on both the breadth of the arbitration provision’s
language, and on the fact that the provision incorporates article 15(a) of the pertinent
AAA rules, that ODL relies to argue that the parties clearly and unmistakably agreed
to submit substantive arbitrability matters—whether they be phrased as the
agreement’s existence or its applicability—to the arbitrator, rather than to the trial
court.
          ODL’s position reverses the proper inquiry. ODL starts by invoking the Master
Agreement’s arbitration clause, then asks if the Master Agreement was incorporated
into the parties’ alleged oral contract. Instead, the initial inquiry is whether the
parties entered into any kind of agreement that could trigger the Master Agreement;
only if the answer to this inquiry is “yes” do we then consider what the Master
Agreement’s arbitration clause provides. We reach this conclusion because of the
Master Agreement’s terms specifying how it would be triggered and because of
ODL’s arguments below. 
          The Master Agreement indicated that it was not self-effectuating, but instead
required a request by Conoco for ODL’s services. For example, the Master
Agreement recited that the parties desired to establish, by entering into it, “the general
terms and conditions to apply should [Conoco] request [ODL] to provide . . . services
to any of its subsidiary or affiliated companies,” and it provides that the agreement
applies “to all services which [ODL] . . . provide[s] for [Conoco] or any of its parent,
subsidiary and affiliated companies” pursuant to Conoco’s request. (Emphasis
added.) In sum, the Master Agreement did not apply in the abstract, but instead
applied only if Conoco requested ODL’s services. The Master Agreement (and its
arbitration clause) was not a binding contract until the parties entered into some kind
of future agreement for ODL’s services. See Moser v. Aminoil, USA, Inc., 618 F.
Supp. 774, 779 (W. Dist. La. 1985) (“The [master] agreement does not bind either
party to perform any services. It merely sets forth their agreement to abide by certain
terms should they enter into contractual relations in the future. . . . In short, no valid
obligation arises until the platform operator . . . requests the services of the
subcontractor . . . and, at that point, the terms of the master service agreement are
incorporated automatically into the written or verbal contract to perform the specified
services.”) (citations omitted). Simply put, the Master Agreement was an agreement
as to what terms would apply if the parties later contracted for ODL’s services.
          ODL’s arguments to the trial court reflected an understanding that some kind
of agreement between ODL and Conoco for the former’s services was needed to
trigger the Master Agreement and to make Conoco subject to its arbitration provision. 
For example, although the parties disputed whether the request for ODL’s services
that could trigger the Master Agreement could be made in ways other than by issuing
and executing a formal RFS, they did not dispute that some kind of request by
Conoco, and acceptance by ODL, was required to make the Master Agreement apply
and for its arbitration clause to bind Conoco. ODL argued to the trial court that the
Master Agreement’s clause providing that it applied to all services made pursuant to
an RFS “does not exclude other agreements” or “any other request for services” from
“being within the scope of the Master Agreement”; that “Conoco requested ODL’s
services on the [FSO Project]”; and that, alternatively, Conoco waived any
requirement for an RFS by, at the December 14 meeting, “request[ing] [that] ODL’s
services . . . be performed directly to Conoco on the [FSO Project]” based on “an
existing scope of work.” All of these arguments reflect an understanding that the
Master Agreement could not apply absent some form of request for ODL’s services
by Conoco. Additionally, it is undisputed that no one at the December 14 meeting
discussed arbitration or incorporated the Master Agreement by reference. 
          The proper focus is thus on whether Conoco requested, in some way, ODL’s
services at the December 14 meeting. If no underlying request for ODL’s services
existed to trigger the contractually separate arbitration agreement, or that itself
contained its own arbitration agreement, then there is no issue of substantive
arbitrability to send to an arbitrator. In these circumstances, it was for the trial court
in the first instance to determine this threshold matter. Cf. Will-Drill Res., Inc. v.
Samson Res., Inc., 352 F.3d 211, 219 (5th Cir. 2003) (“[W]here the very existence of
an agreement is challenged, ordering arbitration could result in an arbitrator deciding
that no agreement was ever formed. Such an outcome would be a statement that the
arbitrator never had any authority to decide the issue. A presumption that a signed
document represents an agreement could lead to this untenable result. We therefore
conclude that where a party attacks the very existence of an agreement, as opposed
to its continued validity or enforcement, the courts must first resolve that dispute.”). 
If the parties did not contract, then they could not have invoked the Master
Agreement under either ODL’s theory or Conoco’s theory of how that agreement
could be triggered. And if the Master Agreement was not triggered, then whether its
arbitration provision required matters of substantive arbitrability to be arbitrated is
irrelevant.
          We overrule ODL’s argument under issue one in the mandamus proceeding
based on substantive arbitrability.
C.      Whether the Trial Judge Abused Her Discretion in Concluding that the
Parties Did Not Enter into a Written Agreement to Arbitrate
          Also under issue one, ODL alternatively argues that the trial judge abused her
discretion in concluding that there was no signed, written agreement between ODL
and Conoco for arbitration of the claim that Conoco orally agreed to pay Conar’s
subcontractors after December 14, 2006. In support, ODL argues (1) that Conoco and
ODL agreed on December 14 for ODL to provide services to Conoco (and for Conoco
to pay and to assume direction of the FSO Project) and that that agreement was
memorialized in writing by e-mail; (2) that the Master Agreement applied whether or
not a formal RFS was issued because, by its terms, the agreement applied to all
international services that ODL provided to Conoco; and (3) that Conoco waived the
requirement for execution of a formal RFS.
          1.       The Standard of Review
          “It is well established Texas law that an appellate court may not deal with
disputed areas of fact in an original mandamus proceeding.” Brady v. Fourteenth
Court of Appeals, 795 S.W.2d 712, 714 (Tex. 1990). Likewise, “[i]n reviewing
findings of fact in a mandamus proceeding, we cannot substitute our judgment for
that of the trial court.” In re Dillard Dep’t Stores, Inc., 198 S.W.3d 778, 780 (Tex.
2006). “Instead, the relator ‘must establish that the trial court could reasonably have
reached only one decision,’ and that its finding to the contrary is ‘arbitrary and
unreasonable.’” Id. (quoting Walker, 827 S.W.2d at 840). Under this standard, the
relator must show that “the evidence compels a finding” that the factual assertion on
which it bases its challenge is true. Id. 
          2.       Analysis
          The Master Agreement provided that the “Master Support Services Contract
Terms and Conditions” attached to the Master Agreement would apply to all services
that ODL provided for Conoco or any of its parent, subsidiary and affiliated
companies (which, in the abstract, would include CVCA) “pursuant to a ‘Request for
Services’ issued and accepted as set forth in Section 1.1 of the Master [Support
Services Contract] Terms [and Conditions].” The Master Support Services Contract
Terms and Conditions, in turn, required that “COMPANY” make the request for
ODL’s services. “COMPANY,” with regard to an RFS, was defined for the Master
Support Services Contract Terms and Conditions as “such parent or affiliated or
subsidiary company of COMPANY [defined as Conoco] entering said [RFS].” Under
this contractual language, if CVCA entered into an RFS with ODL, the Master
Agreement would be incorporated into that contract, but then that contract (and its
arbitration agreement) would be with CVCA, not Conoco, which the trial judge found
was a separate legal entity from Conoco. Therefore, under the Master Agreement’s
terms, for Conoco to be subject to its arbitration provision, Conoco had to request
ODL’s services. ODL’s arguments here and below reflect this understanding.
          The trial judge found that CVCA (not Conoco) agreed on December 14, 2006
to begin paying Conar’s subcontractors directly; that ODL’s services benefitted
CVCA; that Conoco did not agree to begin paying Conar’s subcontractors directly at
the December 14 meeting; and that ODL and Conoco did not enter into an oral
agreement incorporating the Master Agreement. There was conflicting evidence as
to whether the individuals at the December 14 meeting who were not employees of
ODL or Conar were acting as CVCA or Conoco employees and whether they were
representing CVCA or Conoco in making any agreement that was reached. There
was also conflicting evidence as to which Conoco-related entity was billed for or paid
ODL for its services and which Conoco-related entity informed ODL where its bills
should be sent. The trial judge resolved this conflicting evidence in favor of Conoco,
finding that ODL and Conoco did not enter into an agreement on December 14, 2006
that could invoke the Master Agreement. The evidence does not conclusively
establish something other than what the trial judge found in this regard. See In re
Dillard Dep’t Stores, Inc., 198 S.W.3d at 781; see also Brady, 795 S.W.2d at 714
(recognizing that appellate court may not deal with disputed areas of fact in
mandamus proceeding). The trial judge thus did not abuse her discretion in finding
that ODL and Conoco had no contract that could implicate the Master Agreement or
its arbitration provision. Consequently, the trial judge did not abuse her discretion
in concluding that no arbitration agreement existed between the parties or in denying
ODL’s motion to compel arbitration. 
          We overrule the remainder of issue one in the mandamus proceeding, which
concerns the denial of ODL’s motion to compel arbitration.
Whether the Trial Court Erred in Granting Conoco’s
Application to Stay Arbitration (Interlocutory Appeal)

          In issue one in its interlocutory appeal, ODL raises the same challenges to the
trial court’s granting of Conoco’s application to stay arbitration that invoked the TAA
as it did in the mandamus proceeding to the trial court’s denial of its motion to
compel arbitration that invoked the FAA.
A.      What the Standard of Review Is
          ODL does not specify which findings of fact or conclusions of law it
challenges. We have nonetheless reviewed the substance of all of its appellate
arguments to determine which findings of fact and conclusions of law ODL has
implicitly challenged for each appellate argument. See City of Pasadena v. Gennedy,
125 S.W.3d 687, 691 (Tex. App.—Houston [1st Dist.] 2003, pet. denied) (construing
appellant’s challenges, which did not specify to which findings of fact or conclusions
of law they related, to attack pertinent findings and conclusions supporting
complained-of aspects of judgment); see also Tex. R. App. P. 38.1(e), 38.9; Sterner
v. Marathon Oil Co., 767 S.W.2d 686, 690 (Tex.1989) (“[I]t is our practice to
construe liberally points of error in order to obtain a just, fair and equitable
adjudication of the rights of the litigants.”).
          We review legal conclusions de novo. Gennedy, 125 S.W.3d at 691. 
Regarding fact findings, “[w]hen, as here, we have a complete reporter’s record on
appeal, we review the trial court’s fact findings under the same standards for legal
sufficiency as govern the review of jury findings.” Id. As with challenges to jury
findings, “when the complaining party challenges the legal sufficiency of the
evidence underlying an adverse finding on which the party did not have the burden
of proof, the party must demonstrate on appeal that there is no evidence to support the
finding.”


 Id.
          To determine whether there is some evidence to support a finding of fact, “we
must view the evidence in a light that tends to support the finding of disputed fact and
disregard all evidence and inferences to the contrary.” Wal-Mart Stores, Inc. v.
Miller, 102 S.W.3d 706, 709 (Tex. 2003). If more than a scintilla of evidence
supports the finding of fact, we must uphold it. See id. More than a scintilla of
evidence exists if the evidence “‘rises to a level that would enable reasonable and
fair-minded people to differ in their conclusions.’” Ford Motor Co. v. Ridgway, 135
S.W.3d 598, 601 (Tex. 2004) (quoting Merrell Dow Pharm., Inc. v. Havner, 953
S.W.2d 706, 711 (Tex. 1997)). Conversely, evidence that is “‘so weak as to do no
more than create a mere surmise’” is no more than a scintilla and, thus, no evidence.
Id. (quoting Kindred v. Con/Chem., Inc., 650 S.W.2d 61, 63 (Tex. 1983)). “The final
test for legal sufficiency must always be whether the evidence at trial would enable
reasonable and fair-minded people to reach the verdict under review . . . .
[L]egal-sufficiency review in the proper light must credit favorable evidence if
reasonable [fact finders] could, and disregard contrary evidence unless reasonable
[fact finders] could not.” City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005);
accord Chubb Lloyd’s Ins. Co. of Tex. v. H.C.B. Mech., Inc., 190 S.W.3d 89, 92 (Tex.
App.—Houston [1st Dist.] 2005, no pet.).
B.      How We Rule on ODL’s Arguments
          ODL raises the same arguments in its interlocutory appeal of the granting of
Conoco’s application to stay arbitration as it did in its mandamus proceeding
challenging the denial of its motion to compel arbitration. In the mandamus
proceeding, we have already explained why the relevant threshold matter of
substantive arbitrability was for the court, rather than the arbitrator, to decide. 
Accordingly, we overrule the challenge under issue one contending that the arbitrator
should decide matters of substantive arbitrability here. Likewise, we have also
analyzed the evidence and concluded that the trial court did not clearly abuse its
discretion in finding that ODL and Conoco had no agreement that would trigger the
Master Agreement and subject Conoco to arbitration. Although the standard of
review in this interlocutory appeal is no-evidence, rather than abuse of discretion, the
result is the same: the evidence outlined above that the trial court had discretion to
believe also is more than a scintilla of evidence supporting the relevant findings. 
Accordingly, we overrule issue one in ODL’s interlocutory appeal.
Whether the Trial Judge Abused Her Discretion in
Entering Certain Findings of Fact and Conclusions of Law

          In issue two in both the mandamus proceeding and the interlocutory appeal,
ODL first complains that the trial court “abused its discretion in failing to modify its
finding[s] of facts on the merits of ODL’s claims which go beyond the question of
arbitrability,” also alleging that “[t]hese premature findings are improper under Texas
law and ODL labors under the likelihood that ODL will never get a fair trial on the
merits before [the trial court].” ODL also complains that certain of the findings are
“completely unsupported by the evidence.” ODL raises both of these complaints to
the following findings: number 12 (“Because of a default by Conar, on December 14,
2006 CVCA orally agreed to begin paying Conar’s subcontractors directly, subject
to paperwork.”), number 13 (“CVCA did make some payments to Conar directly.”),
number 15 (“ODL’s services benefitted CVCA.”), and number 16 (“On December 14,
2006, [Conoco] did not orally agree to begin paying Conar’s subcontractors
directly.”).
 
          Although it includes this challenge under issue two in its brief in the
interlocutory appeal, ODL asks this Court to review the complained-of findings of
fact under our mandamus jurisdiction, citing In re H2O Plumbing.


 See 115 S.W.3d
79, 81–82 (Tex. App.—San Antonio 2003, orig. proceeding) (holding (1) that
mandamus would issue to require trial judge to vacate entry of findings of fact on
merits of claims, in case in which trial judge had also entered interlocutory order
granting application to compel arbitration, and (2) that no interlocutory appeal lay
over entry of findings of fact relating to order compelling arbitration, which was itself
unappealable); see also H2O Plumbing, Inc. v. Capital Indus., Inc., No.
04-03-00136-CV, 2003 WL 21217455, at *1 (Tex. App.—San Antonio May 28,
2003, no pet.) (memo. op.) (in companion case to that discussed herein, holding that
no appellate jurisdiction lay over court’s entry of findings of fact relating to order
compelling arbitration, which was itself unappealable). 
          In In re H2O Plumbing, the interlocutory order to which the findings of fact
related was an unappealable order compelling arbitration, whereas here, one of the
underlying orders to which the findings relate is reviewable by interlocutory appeal,
and the other is reviewable by mandamus. Additionally, in In re H2O Plumbing,
nothing precluded the findings from being used against the complaining party in
arbitration, which was one of the reasons that the court held that no adequate remedy
by appeal existed. See In re H2O Plumbing, 115 S.W.3d at 81. Here, in contrast, the
trial judge has not compelled arbitration. Assuming without deciding that no
adequate remedy by appeal exists here, we hold that the trial judge did not abuse her
discretion in either way that ODL contends. 
          First, as previously discussed, there is some evidence, when viewed in the
required light, that supports each of the complained-of findings. We thus overrule
this argument under issue two in the mandamus proceeding. Second, one of the
threshold issues raised by the parties’ arbitration motions was whether a contract
existed between Conoco and ODL that could trigger the Master Agreement. Put
another way, the trial judge could reasonably have believed that she had to determine,
as a preliminary matter, whether a contract between these two parties that could
invoke the Master Agreement arose at the December 14 meeting. If it did not, then
she could also reasonably have determined that the Master Agreement—the sole
agreement between these parties containing an arbitration clause—was not triggered,
meaning that no arbitration agreement existed between these two parties to be
enforced. Because the complained-of findings addressed this threshold issue at the
arbitration-related hearing, it was not an abuse of discretion for the trial judge to have
entered them. Moreover, after ODL voiced its opposition to the findings of fact, the
trial judge entered a supplemental conclusion of law that “[t]he findings made by the
court in connection with the arbitration motion are not binding on the parties except
in connection with the arbitration motion and are not rulings on the merits of the
case.” Nothing in the record indicates that the trial judge will depart from this legal
conclusion at trial or that ODL “will never get a fair trial on the merits” with the trial
judge because of her complained-of findings of fact, which the judge, in effect,
limited to her arbitration ruling. We thus overrule the remainder of issue two in the
mandamus proceeding.
Conclusion
          In the interlocutory appeal, we affirm that portion of the order that granted
Conoco’s application to stay arbitration that was asserted under the TAA. In the
mandamus proceeding, we deny the petition for writ of mandamus complaining of (1)
that portion of the interlocutory order that denied ODL’s motion to compel arbitration
under the FAA and (2) the trial judge’s findings of fact.



     Tim Taft
     Justice

Panel consists of Justices Taft, Jennings, and Bland.

Justice Jennings, concurring in the judgment.